This case on the docket, 2-14-0987, people of the state of Illinois, Mr. Ashley Abernathy, defendant's appellant. Arguing on behalf of the defendant's appellant, Mr. Fletcher P. Allen. Arguing on behalf of the defendant's appellant, Mr. Larry Fletcher P. Allen. Thank you. Put your hand where I can see it. Good morning, Your Honors. May I please have a quote? My name is Fletcher Allen. I represent the defendant's appellant, Ashley Abernathy. The issue in this case is straightforward. The state cannot introduce a document to evidence based solely on foundation testimony from a witness who has no personal knowledge regarding the creation or the authenticity of that document. In this case, the trial would allow that to happen. And in this case, that constitutes plain error. The document in question here is a police statement purportedly written by the defendant. The state called its only police witness, Officer Wickhom, who testified on direct that the defendant, in fact, wrote the statement that was in her handwriting and it bore her signature. However, even on direct examination, Officer Wickhom never claimed to have seen the defendant write the statement and never claimed any basis from which he could compare the defendant's handwriting to that on the statement. He testified that she wrote a witness statement, correct? Correct. He testified that she signed the statement, correct? Correct. No objection? There was an objection to the foundation. I know, but there was no objection at that point in time as to his basis of knowledge or anything like that, correct? No. So is that in the record, then? Is that something that the trial court could consider, that this witness testified that she wrote a statement and she signed a statement? He could consider that that was a testimony. But what the testimony did not include was I saw it, and I know this is her handwriting because I can compare it to something else. But that argument was not made in the false trial motion, was it? It was not. How is this plain error? It's plain error because this is a closely balanced case, and the statement really was the most credible piece of evidence the state had. Most credible, but it was not the only evidence. You had the testimony from the victim, and you had a 9-1-1 recording, correct? Correct. But the victim was impeached on several grounds. And he was a three-time convicted felon. His statements changed from when he talked to the 9-1-1 operator to when he spoke to the police to when he testified at trial. Police officers observed injuries on him that were consistent with his description, correct? He observed, I believe, a cut on the cheek. Right. That was it. But that's consistent with having someone's keys thrown at him, correct? Yes, it could be. It could be consistent with a lot of things. But I think that the closeness of the case is really illustrated, and the importance of the statement as well, is illustrated by the closing arguments in this case, where the defense counsel spent his entire closing argument pointing out the credibility problems that the complainant had, and the prosecutor spent his entire rebuttal argument arguing that none of those credibility problems matter because we have to defend the statement. Of course, if you had made this argument, the defense had made this argument at trial and made a specific foundation objection, the trial court could have had an opportunity to rule on it, and then the state could have called the officer who actually took the statement, right? Correct? Well, it could have given the state a better opportunity, but the state did have that opportunity anyway. That's what the rule of forfeiture is all about, isn't it? To give the trial court the opportunity to rule on the issues? Well, there was a foundation objection. There was a foundation objection, not a specific objection, correct? Well, it was... What was lacking? No, he did not specifically say what was lacking. It was on the police form signed by the defendant, and by its contents, didn't it reflect that the reference was to that incident that occurred? The reference was definitely to that incident, but what was missing there was any... And what you see in the case law where courts find that the contents of the statement help establish its authenticity was any kind of obscure fact that only the defendant would know. Everything in that statement was also in Larry Nichols' testimony, and there were also, in addition to Larry Nichols, there were, according to Officer Whitcomb, seven or eight people crowding around the incident. One of them had even claimed to have had the incident on video, although the video never showed up. So there was nothing in the statement that shows that it had to be written by the defendant. And the standard is... I mean, the trial court at that point in time is a limited function, a limited gatekeeper function, correct? That's true of the court of Watkins and other cases where there's a rational basis to conclude that the defendant wrote the statement. It comes in, and then the defendant can get up and say, I never wrote that statement. Someone else must have written that statement. It is a low bar, but it's still greater than nothing. And what we have here is really nothing outside of the statement itself, because Officer Whitcomb didn't see it. He doesn't have any basis to compare. So his testimony, he might as well be the prosecutor saying, this looks like a good statement to me. It could be, you know, it doesn't... It has to be something beyond zero, and I think... Something beyond zero. I mean, we have in the record that the officer said that he has some knowledge that a statement was written by her and signed by her. And then, lo and behold, what's presented to the trial court is a statement, written statement, signed by someone with her name, from the Carpentersville Police Department with this case number at the time around when all this happened, the same date it happened, and then it describes the incident. So tell me how that's not a rational basis to conclude for the trial court that the defendant wrote the statement. Because nobody said they thought they saw what the defendant wrote it, and nobody presented any circumstantial evidence that the defendant did. The officer could have gotten everything that he got by just reading the statement. So these text message cases where nobody's ever going to see somebody sitting there texting, and nobody's going to see them instead of looking over their shoulder while they're texting it, those only come in, as you're arguing, is if there's some piece of information that only the defendant and the defendant himself or herself would know. Not necessarily that, but there has to be something. And it's always there in these cases. In Downing, there was allegations in the e-mails that only the defendant would know. In Towns, it was a note that was found in the defendant's, in the purported author's bedroom. And in, I'm drawing a blank on the name of the case. In the case that I described with the text messages that I described. Lockets. Yes, lockets, sorry. In that case, the court found that there was not enough. And that was a case where it was text messages found on a phone in the defendant's house, or a house the defendant lived in, and that were sent by somebody with the defendant's first name. So what I think it really shows is that you can't, you have to have something, you have to have something that really ties this to the defendant, not just, and it's not. Well, you know, the testimony on cross-examination tied the statement to the defendant. When the officer said it was one of my colleagues who interviewed the defendant. Well, again, if it was one of my colleagues interviewing the defendant, that just shows the officer, the officer Whitcomb wasn't there. He wasn't there for the statement. But isn't that a reasonable inference that that other, quote-unquote, other colleague took the statement? Isn't that a reasonable inference? I mean, on cross-examination, that was not explored, and the State was not really given an opportunity to bring in another officer, because it was basically left at that, and you put in your brief at page 5, and you had occasion to speak with Ms. Abernathy, et cetera, and then the officer says, okay, I believe it was a colleague of mine that interviewed her, and then it's okay, and then counsel moves on. But how does that not further corroborate that a statement was given by the defendant, by the police, at least verbally, and then there's a follow-up written statement? But the question is, was this written statement that statement that she wrote, or did somebody else write the statement? She signs the statement. There's a signature on it. Well, no, she signed the statement. Somebody wrote, actually, Abernathy on it. The language of the Watkins case is that documentary evidence, therefore, may be authenticated by its contents if it's shown to contain information that would only be known by the alleged author of the document, or at the very least by a small group of people, including the alleged author. So it's not just that person themselves. It can be a small group, according to Watkins, right? Right. And so this information in this statement would have been known by the defendant or Mr. whatever the victim is called. Nichols. Yeah, Nichols. Or anybody, any of the other people who were there. There were seven or eight people who were there. So your theory is that somebody snuck out to the station, impersonated your client, wrote the statement, and left. My theory is that the state has to present some evidence that That argument wasn't made in the trial court. Not explicitly. Again, I think that's implied though in the foundation objection. That's what a foundation objection would be, is you didn't affirmatively show that nothing like that happened. And it would have taken, obviously, very little to establish this. If an officer sat there and watched you write the statement, I think that would have been enough. And frankly, I think that's probably what people assumed Officer Whitcomb had done until he revealed on cross-examination that he had it. But if he had left her alone in the room with a pen and a paper and she came out and there was a statement, that would have been enough. But somebody's got to say it, and nobody said it here. There was nobody who had direct knowledge said it here. And that's what's missing in this case. And on the question of plain error, first of all, I would note that the state doesn't even address the closeness of the evidence. But I think it's pretty clear from the record, especially looking at the closing arguments, this statement is why the defendant was found guilty in this case. And without the statement, there's clearly a substantial probability that the outcome would have been different. So under the second prong of plain error, this would be plain error. And unless Your Honors have any further questions, I would ask that you reverse the defense conviction and demand for a new trial. Thank you, Mr. Hanley. We're out of time for rebuttal argument. Ms. Barnes, you may proceed. Good morning, Your Honors. May it please the Court, my name is Mary Beth Barnes, and I represent the people of the state of Illinois. We come here this morning to respectfully ask Your Honors to affirm the judgment in this case. Initially, I have to apologize to this Court. When I was prepping for the argument, I noticed a fairly glaring omission. When discussing the matters that corroborated the statement, I failed to mention that she talked about either striking with the keys or throwing them at him, and the officer observed the mark on his face that everyone discussed, but I failed to put it in my brief, for which I apologize. Do you agree the evidence was close in this case? No, I do not. Is that argued in your brief? Yes, sir. Well, it is a statement in my brief. In responding to the fact that the appellant forfeited the claim and that he wanted it to be viewed under plain error, I believe that we pointed out that there was, in fact, no error, and so plain error review was not appropriate. I don't know if I specifically stated that the evidence was not close, but the evidence is not close. Even if you actually take away the statement for the sake of argument for the moment, you have a victim who discussed what occurred, you had corroboration from the mark on his face, you have the fact that all of the impeaching evidence was placed before the trial effect, who happened to be the trial court, and he made a determination, despite the fact that there was significant impeachment, that as to this particular matter, he found the victim credible. That may have been because despite the significant impeachment, there were not crimes of dishonesty. You're not looking at forgery and that type of thing. And so, again, to the extent that the victim's statement was corroborated, there was simply nothing close about the case. As to the discussion about authentication, the case law that we talked about in our brief says that documents can be authenticated through either direct or circumstantial evidence, and circumstantial evidence can include such things as the content, the appearance of the document, the substance, and any distinctive characteristics. Here, the document itself states that it is a form from the police department and it's a booking form for witnesses. It is clearly a police department form, and so to the extent that the defendant discusses the number of people who could have forged something, there's only testimony that the victim and the defendant went to the police department. There's no reason to believe that anyone else was at the police department. To the extent that we would look at individual characteristics, in the statement, the author, who we believe to be the defendant, doesn't say she picked up a stick. She says she went into her house to get a stick. She's the only one who would know where she had obtained the stick with which she struck the defendant. But there is no deviation among the various stories that she struck the defendant with a stick. So whether the memory of the victim is accurate or inaccurate as to whether she picked up a stick or whether she kicked the banister to pull out a stick, a year later at trial, the court found, or I apologize, the prosecutor argued that a year later there could be changes in memory. But where the defendant, at the day of the occurrence, said specifically she went into the house, that would be a distinctive characteristic. We submit that the trial court correctly denied what was an undeveloped secondary objection based on foundation. The defense attorney, when there was a discussion of admitting the statement, objected and the trial court asked why, and he said, and the judge said, you know, overruled. And then he said, oh, and foundation. That was the only point that he mentioned foundation. He did not at any point explain why there was a concern with foundation. And in arguing his post-trial motion, never mentioned it. He did mention that, or I apologize, on appeal here, the defendant mentions that on rebuttal, the state's attorney, the assistant state's attorney, looked to the statement and said that the various impeachment was not problematic because we had the statement. And so clearly the state did rely on the statement. However, the core of our argument now is the trial court properly accepted the statement. There was, I think, I think Officer Whitcomb misspoke in saying that she wrote the statement. I think the statement clearly has different handwriting. Counsel courteously included the statement with the brief. And that was one of the first things that I looked at. And I think it's apparent that whoever wrote the statement, I assume the officer who interviewed her, had significantly different printing than the way she printed her name and then wrote her name. And she personally has very good handwriting. The officer didn't. But to say that Officer Whitcomb had no knowledge of this, I think is not entirely correct. Although Officer Whitcomb admitted in his direct testimony that he did not personally know her. Other officers who came to the scene did know her and recognize her. And the only testimony presented as to him being in the police department was Officer Whitcomb's talking about asking the victim if he would agree to go to the police department and then his statement that the defendant was arrested and she was taken to the police department. We know that both of them, both the victim and the defendant, were interviewed at the police department. We don't know if there was any close proximity. We don't know when he said that she wrote it. We don't know that he was in an interview that had windows and you could see it. We simply don't know. And we don't know because it was simply never developed. And it may well be that the Assistant State's Attorney should have called the other officer. And it's apparent that the way the case was tried, he had the officer who interviewed the victim because I think with the amount of impeachment that could be provided on someone who had been a felon, that he wanted to show the corroboration of the victim's statements with his condition and apparently did not think that there was going to be a question about authentication. That being said, however, I think it is apparent based on the circumstantial evidence that was presented that the trial court properly granted the people's motion to admit the document which contained the statement. With that, we would ask this court to affirm the conviction. Unless you have any other questions. Thank you very much. Thank you, Ms. Burris. Mr. Hanlon, for a vote of aye vote. Primarily, I think the State's argument here just illustrated my point. I thought the testimony was that the statement was written by Ashley Abernathy. And looking at the statement, I thought it looked like it was written by Ashley Abernathy. Now I hear, no, that's probably not true. It was probably written by the officer who took the statement who we don't even know the name of. That's the problem. That's why you need somebody to come in and testify. Because there does appear to be two different print types. If you look at the first sentence and then look at the second sentence, or at least the first couple of lines, the print appears to be slightly different than the last couple of lines. So it could have been after added. That's why you need an officer to testify. But when you look at the content of the statement itself, it certainly doesn't look like something a police officer would write, even if they're summarizing what somebody else was telling them. But that's the point. Somebody has to testify. Somebody just has to say what were the circumstances. And then it's all clear. But when you don't do that, then you don't have a foundation. And that's the situation here. And one other thing I want to point out is when the statement relies on things that are in the statement itself and aspects of characteristics that are in the statement itself, you know, it's a police form. It's got the time and date written on it by a police officer, apparently. If you use all those things, and only those things to establish authenticity, what you're doing is creating a new form of self-authenticating document. There has to be something from outside the document to authenticate it. Otherwise, it's a self-authenticating document, and we know that these are not listed under the Supreme Court or the Illinois Rules of Evidence as one. And finally, it's true the trial judge considered the impeachment of the complainant, and he considered his prior convictions when he made his ruling, but he also considered the statement. So the trial judge's ruling does not establish that the evidence was overwhelming, in this case, or that it was not closely balanced. So I don't believe that's persuasive. Again, the statement was the reason to believe Larry Nichols is what corroborated Larry Nichols' testimony. It was not properly authenticated, as demonstrated here by the state's argument. So I would ask that Your Honor find this plain error to admit it and reverse the defendant's conviction and demand for it to be dropped. Thank you, Your Honor. The Court will thank both attorneys for their arguments today, and the case will be taken under advisement for these short reasons.